UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATASHA B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> ACTING COMMISSIONER OF <br> SOCIAL SECURITY,[1] <br><br> Defendant. | No. 20 CV 5181 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Latasha B. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying her application for benefits. For the following reasons, the Court reverses the SSA's decision, denies the Acting Commissioner of Social Security's motion for summary judgment [22],[2] and remands this case to the agency for further administrative proceedings.

## Background

### A.  Procedural Background

In December 2017, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of September 3, 2017. [16-1] 13. The claim was denied initially and on reconsideration. [*Id.*]. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) on May 21, 2019. [*Id.*] 39-92. In a decision entered on August 30, 2019, the ALJ found that plaintiff was not disabled and denied her application. [*Id.*] 13-32. The Appeals Council denied review on July 9, 2020 [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [16], which refer to the page numbers in the bottom right corner of each page.

C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction over the appeal pursuant to 42 U.S.C. § 405(g).[3]

### B. The ALJ's Decision

The ALJ reviewed plaintiff's disability claim in accordance with the SSA's five-step sequential evaluation process. At step one of his decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. [16-1] 15. At step two, the ALJ determined that plaintiff had the following severe impairments: post-traumatic stress disorder (PTSD), bipolar disorder, major depressive disorder, obesity, punctate keratitis, and myopic degeneration. [*Id.*] 16-17. At step three, the ALJ ruled that plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. [*Id.*] 17-20. Before turning to step four, the ALJ determined that plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels with the following nonexertional limitations: plaintiff (1) can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds; (2) can frequently stoop, kneel, crouch, and crawl; (3) is able to avoid ordinary hazards in the workplace such as boxes and doors ajar; (4) can frequently read type set in 14-point font or greater and can work with objects the size of a quarter or greater; (5) can work at unprotected heights, operate moving mechanical parts, or operate a commercial vehicle; (6) can perform simple, routine tasks; and (7) should not interact with members of the public, can occasionally interact with coworkers, but should not work on joint tasks with coworkers. [*Id.*] 20-29. At step four, the ALJ found that plaintiff could perform her past relevant work as a packager. [*Id.*] 29-30. Although that finding meant that plaintiff was not disabled, the ALJ proceeded to step five and found that other jobs existed in the national economy in substantial numbers that plaintiff could perform, such as laundry worker (35,000 jobs) and laundry room attendant (30,000 jobs). [*Id.*] 30-31. Accordingly, the ALJ found that plaintiff was not disabled.

### Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a sequential five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairments; (4) whether the claimant is

---

[3] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [7].

unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted).

## Discussion

Plaintiff argues that the ALJ's decision should be reversed because (1) the ALJ erred in determining plaintiff's mental RFC; (2) the ALJ erred in determining her physical RFC; (3) the ALJ erred in weighing the opinion evidence from plaintiff's treating nurse practitioner Jason Immertreu; and (4) the ALJ's subjective symptom determination was patently erroneous. *See* [17] 3-16. The Court agrees that the ALJ did not adequately explain why he rejected Immertreu's opinion as not persuasive, and that the ALJ's failure to consider whether plaintiff's bipolar disorder affected her ability to adhere to recommended treatments tainted his subjective symptom determination.[4]

### A. The ALJ Did Not Properly Evaluate Nurse Practitioner Immertreu's Opinion

"An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion." *Georgios A. v. Kijakazi*, No. 20-cv-2729, 2022 WL 1004249, at *5 (N.D. Ill. Apr. 4, 2022) (internal quotation marks omitted). The ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ need only explain "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or finding is, the ALJ

---

[4] Because these issues are dispositive, the Court need not address plaintiff's other arguments for reversal.

3

considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id.* Supportability means "how well the objective medical evidence and supporting explanations presented by a medical source support the opinion," and consistency means "how consistent the opinion is with other record evidence." *Amaris R. v. Saul*, No. 20 C 1695, 2022 WL 972324, at *2 (N.D. Ill. Mar. 31, 2022).

"An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors." *Victor F.*, 2023 WL 2429357, at *3. "While a detailed analysis is not required, the ALJ must consider the regulatory factors and explain why a medical opinion is not supported or is not consistent with the record to give a reviewing court the bridge to connect the outcome to the record." *Id.* (internal quotation marks and brackets omitted).

In this case, plaintiff submitted a Mental Impairment Questionnaire from Jason Immertreu, an advanced practice nurse who treated plaintiff monthly from March 2017 through April 2018. [16-2] 963-65. Immertreu explained that plaintiff's bipolar disorder and PTSD caused her to experience emotional lability, mood disturbance, panic and irritability, persistent irrational fears, social withdrawal or isolation, suicidal ideation or attempts, intrusive recollections of a traumatic experience, and anhedonia or pervasive loss of interests. [*Id.*] 963. Immertreu described the "clinical findings" that demonstrated the severity of plaintiff's mental impairment and symptoms as follows: persistent fear of impending failure and setbacks, significant lack of confidence and hope, and anhedonia and pessimism are overwhelming. [*Id.*]. Plaintiff's prognosis, according to Immertreu, was "chronic illness, but may be ready to return to work in next 2 years with med-adherence and increased [unclear] if remains engaged in [unclear] therapies." [*Id.*] 964. Immertreu opined that plaintiff was markedly limited in her ability to set realistic goals or make plans independently of others and moderately limited–meaning there was "more than a slight limitation in this area but the individual is still able to function satisfactorily"–in seven areas: (1) maintaining attention and concentration for extended periods, (2) sustaining an ordinary routine without special supervision, (3) working in coordination with or proximity to others without being unduly distracted by them, (4) completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, (5) interacting appropriately with the general public, (6) getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, and (7) traveling in unfamiliar places or using public transportation. [*Id.*]. Immertreu also determined that plaintiff was mildly limited–that is, she had "a slight limitation [but] the individual can generally function well"–in nine other areas. [*Id.*]. Immertreu opined

4

that plaintiff's impairments and symptoms would cause her to be absent from work "[a]bout twice a month" and would "interfere with the attention and concentration needed to perform even simple work tasks" for 11 to 15% of a typical workday. [*Id.*] 964-65.

The ALJ explained that he "did not find the opinion of Mr. Immertreu persuasive." [16-1] 29. According to the ALJ:

> His assessment is somewhat inconsistent insofar as he indicates the claimant would be absent two or more days each month and off task up to 15% of the workday, but he notes mostly mild limitations and only one marked mental limitation in the mental abilities and aptitudes required for unskilled work. In addition, his treatment notes from April 2018 indicate that the claimant needed to be engaged and working towards a significant goal. This is inconsistent with his statement that she might be ready to return to work in two years with medication adherence.

[*Id.*] (internal citation omitted).

The ALJ's assessment of Nurse Immertreu's opinion did not adequately address the supportability and consistency of the opinion.

First, the ALJ failed to adequately explain how well "the objective medical evidence and supporting explanations presented" by Immertreu supported his opinion. 20 C.F.R. § 404.1520c. The ALJ acknowledged that Immertreu had treated plaintiff for over a year [16-1] 28, and the ALJ recited some of the findings in Immertreu's treatment notes in his decision, *see* [*id.*] 23-24. But the ALJ never explained whether those findings were consistent or inconsistent with his opinions. Instead he simply summarized the evidence without analyzing or commenting on it. As plaintiff observes, *see* [17] 11-12, many of the findings in Immertreu's records appear to support the mental limitations that he assessed. *See* [16-2] 845 (noting plaintiff's impaired insight and judgment); [*id.*] 853, 861, 876 (noting plaintiff's dysphoric mood and affect); [*id.*] 842, 845, 854, 862 (noting plaintiff's history of suicidal ideation and aborted suicide attempt). "Without a discussion of that treatment – the diagnoses, the observations, the reported symptoms – the Court cannot find that substantial evidence supports the ALJ's conclusion" that Immertreu's opinion was not persuasive because it was not well-supported. *Farzad K. v. Kijakazi*, No. 20-cv-2594, 2021 WL 4775297, at *4 (N.D. Ill. Oct. 13, 2021) (remanding where ALJ noted that medical source treated plaintiff on weekly basis there was "no discussion of what those mental health records show" in ALJ's decision); *see also Theresa M. v. Kijakazi*, No. 20 CV 481, 2022 WL 4552093, at *4 (N.D. Ill. Sept. 29, 2022) (remanding where Court was "unable to determine whether substantial evidence supports the RFC determination" because "the ALJ merely

5

summarized the evidence without meaningfully evaluating it or describing how it supported the RFC determination").

To the extent the ALJ did address the supportability of Nurse Immertreu's opinions, this was limited to cherry-picking a single paragraph from Immertreu's April 25, 2018 treatment note. There Immertreu had observed that plaintiff was "[p]lanning to meet with financial aid rep at McCormick College" about "paralegal track." [16-2] 883. Immertreu's note continues: "Has done this work before and feels well-suited. Wavering on commitment, but urged to follow-through, as she is no longer working and needs to be engaged and working toward a significant goal that holds potential for greater financial stability." [*Id.*] 883. In the ALJ's view, that statement was inconsistent with Immertreu's opinion that plaintiff "might be ready to return to work in two years with medication adherence." [16-1] 29. The ALJ did not explain why these two statements were inconsistent, and it is not obvious to the Court that Immertreu's exhortation to plaintiff that she "be engaged" and "work[ ] toward a significant goal that holds potential for greater financial stability" is in any way inconsistent with Immertreu's conditional opinion that plaintiff "might" be able to return to work in two years if she remained compliant with medication and engaged in therapy (an issue which the Court discusses in more detail below). [16-2] 963. While the Court accepts that it cannot weigh the evidence itself or second-guess how the ALJ viewed the record, this part of the ALJ's decision is so poorly reasoned as to preclude meaningful appellate review. *See Tyhowon H. v. Kijakazi*, No. 21-cv-371, 2023 WL 6623211, at \*3 (N.D. Ill. Oct. 11, 2023) (the requirement that "ALJ build an accurate and logical bridge between the evidence and her conclusion is designed to ensure meaningful review of the ALJ's decision by the district court; if a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required") (internal quotation marks and brackets omitted).

Second, the ALJ failed to adequately explain whether Immertreu's opinions were consistent with other medical evidence in the record. Notably, both state agency reviewers opined–as did Immertreu–that plaintiff was moderately limited in both her ability to concentrate, persist, and maintain pace and to carry out detailed instructions. [16-1] 101, 118-19. These reviewers also opined that plaintiff was moderately limited in her ability to set realistic goals or make plans independently of others [*id.*] 102, 120], whereas Immertreu found that plaintiff had a more severe limitation in this area. In addition, during a February 2018 consultative examination with Dr. Kathryn Wheeler, plaintiff was unable to complete the serial sevens test past 93. Because the serial sevens test "does not test for the ability to perform basic math, but instead tests for the ability to sustain focused attention and concentration," *Renee E. v. Kijakazi*, No. 19 CV 7840, 2022 WL 3576662, at \*6 (N.D. Ill. Aug. 19, 2022), this was additional evidence of plaintiff's impaired ability to pay attention and concentrate that, on its face, was consistent with Nurse Immertreu's opinion. Nowhere did the ALJ acknowledge or attempt to grapple with this consistent body of evidence and its bearing on the persuasiveness of Immertreu's opinion.

Instead, the ALJ rejected Immertreu's opinion about plaintiff's likely absences from work and off-task time because it was inconsistent with Immertreu's finding that plaintiff had "mostly mild limitations and only one marked mental limitation in the mental abilities and aptitudes required for unskilled work." [16-1] 29. Unfortunately, that was a textbook example of an ALJ cherry-picking evidence that was arguably consistent with his decision and ignoring favorable evidence that supported plaintiff's claim. To begin with, the ALJ completely ignored the series of moderate limitations that Immertreu had assessed. As noted above, Immertreu found that plaintiff was moderately limited in her ability to maintain attention and concentrate for extended periods, sustain an ordinary routine without special supervision, and complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. [16-2] 964. "[T]he ALJ's failure to consider findings supporting [Nurse Immertreu's] opinion constituted the impermissible practice of cherry-picking facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Sylvia R. v. Kijakazi*, No. 19 C 4854, 2022 WL 540757, at *6 (N.D. Ill. Feb. 23, 2022) (internal quotation marks and brackets omitted). Moreover, having failed to consider these moderate limitations when addressing Immertreu's opinion, the ALJ could not have considered their obvious relationship to plaintiff's ability to maintain an acceptable level of attendance at work and to remain on-task during the workday. These moderate limitations in plaintiff's ability to concentrate for extended periods, sustain an ordinary routine without special supervision, complete a normal workday without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number of breaks would seem to provide direct support for Immertreu's opinion that plaintiff would be off-task between 11 and 15% of a workday and miss up two days of work for a month. But the ALJ inexplicably failed to discuss them or how they affected the persuasiveness of Immertreu's opinion.

Finally, the ALJ's error in weighing Nurse Immertreu's opinion was not harmless. At the administrative hearing, the ALJ asked the vocational expert (VE) whether a hypothetical claimant who had the same RFC as plaintiff, but who also "would be off task for 15 percent or more of the workday and/or absent from work two or more days a month," could find work in the national economy. [16-1] 86. The VE testified that the off-task/absence-from-work limitation would preclude all employment. [*Id.*] 86-87. Accordingly, if the ALJ had found Immertreu's opinion persuasive after properly considering whether the opinion's supportability and consistency, the ALJ likely would have ruled that plaintiff was disabled. On remand, the ALJ must reevaluate Immertreu's opinion and explain whether and to what extent he finds that opinion persuasive in light of its supportability, consistency, and the other applicable regulatory factors. *See* 20 C.F.R. § 404.1520c.

### B. The ALJ Failed To Consider Whether Plaintiff's Bipolar Disorder Affected Her Ability To Comply With Recommended Treatment.

"When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Devon R. v. Kijakazi*, Case No. 21 C 1562, 2022 WL 3716264, at *2 (N.D. Ill. Aug. 29, 2022). "An ALJ's findings concerning the intensity, persistence, and limiting effect of a claimant's symptoms must be explained sufficiently and supported by substantial evidence." *Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021). An ALJ's evaluation of a claimant's subjective symptom allegations may be overturned only if it is "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

If a claimant "fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find that the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017). In other words, "[a] claimant's statements about symptoms may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." *Charles B. v. Saul*, Case No. 19 C 1980, 2020 WL 6134986, at *7 (N.D. Ill. Oct. 19, 2020) (internal quotation marks omitted). "However, the ALJ must not draw any inferences about a claimant's condition" from her failure to comply with prescribed medications or treatment "unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (internal quotation marks omitted).

In cases involving claimants with mental illnesses, "[t]he Seventh Circuit has repeatedly held that ALJs must consider the effect mental health illnesses may have on a claimant's ability to comply with treatment." *Pulley v. Berryhill*, 295 F. Supp. 3d 899, 901 (N.D. Ill. 2018). Bipolar disorder is "by nature episodic and admits to regular fluctuations even under proper treatment[.]" *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011). "[O]ne of the most serious problems in the treatment of mental illness" is "the difficulty of keeping patients on their medications." *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010). The Seventh Circuit has accordingly held that "ALJs assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference." *Jelinek*, 662 F.3d at 814.

Here, the ALJ ruled that plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms" were "inconsistent because the record does not demonstrate that the claimant's impairments preclude her from

8

working entirely." [16-1] 22. In this section of the decision, the ALJ repeatedly noted that plaintiff had been noncompliant with prescribed medications and refused to participate in multiple kinds of therapy. *See* [*id.*] 23 (discussing February 7, 2018 treatment note in which plaintiff reported depression and difficulty concentrating after she "ran out of her medications but agreed to restart Seroquel and Sertraline after acknowledging that these medications improved her mood and sleep"); [*id.*] (discussing Dr. Wheeler's consultative examination, during which plaintiff "stated that she was in therapy, but did not go because she cried and felt worse when talking to the therapist"); [*id.*] 24 (noting plaintiff's admission during March 2018 appointment that "she was not compliant with her medication at the time she experienced suicidal thoughts"); [*id.*] (noting that plaintiff attempted to commit suicide "several weeks before an April 2018 appointment" and that "[i]npatient psychiatric treatment was recommended, but she stated that she was no longer suicidal and did not want to go to the hospital"); [*id.*] (noting plaintiff's report during June 27, 2018 appointment that plaintiff "had not taken Seroquel in one month and began cutting her wrists the week before the appointment. Plaintiff was counseled to voluntarily admit herself to the hospital and made a plan during the session to drop off her son with a relative and go to the hospital. However, she did not go to the hospital as planned."); [*id.*] (noting that, as of October 2018, plaintiff had "lost her insurance and shut down for a while" and "did not take medication apart from her HIV medication"). The ALJ also noted several instances when plaintiff or a treater reported that she was compliant with medication and that her medications helped control her bipolar disorder and PTSD. [*Id.*] 25 ("claimant reported compliance with all medications in March 2019); [*id.*] (noting report by Dr. Marsha Snyder, who treated plaintiff's mental impairments, that bipolar disorder and PTSD were "well controlled with medication"). After summarizing this evidence, the ALJ acknowledged that plaintiff "was inconsistent in her adherence to treatment" [*id.*] 26, but somehow concluded that "[t]he claimant is compliant with all medications." [*Id.*] 27.

Substantial evidence does not support the ALJ's consideration of plaintiff's adherence to recommended modes of treatment. The record before the ALJ raised a serious question about plaintiff's ability to take her medications and participate in therapy on a regular basis. And despite plaintiff's diagnosed bipolar disorder, the ALJ failed to consider whether or to what extent plaintiff's mental illness and its ensuing limitations impeded her ability to comply with treatment recommendations. Instead, the ALJ appears to have concluded that plaintiff's symptoms were most severe when she was non-compliant, but that plaintiff was better able to function when compliant. *Compare* [16-1] 26 (plaintiff "reported a suicide attempt in early 2018 at a time when she was not taking her medication"), *with* [*id.*] 27 (finding that "claimant is compliant with all medications" and "doing well on depression medications"). In so concluding, however, the ALJ failed to consider whether plaintiff's bipolar disorder played a role in her treatment non-compliance and effectively assumed that plaintiff could have taken her medications had she wanted to. *See Reid C. v. Saul*, No. 19 CV 50101, 2020

9

WL 6747001, at *5 (N.D. Ill. Nov. 17, 2020) (remanding where ALJ drew adverse credibility inference based on plaintiff's non-compliance with treatment recommendations because ALJ "failed to explore" alternative explanations for noncompliance and "apparently assumed that Plaintiff could easily comply if he wanted to").

Finally, the Acting Commissioner argues that plaintiff "cites no record evidence to support [her] speculation" that her bipolar disorder "may have prevented her from complying with outpatient programs and taking her medication." [23] 13. This argument fails for two reasons. First, Seventh Circuit case law put the burden squarely on the ALJ to consider whether plaintiff's mental illness prevented her from complying with recommended treatment. *See Jelinek*, 662 F.3d at 814 ("ALJs assessing claimants with bipolar disorder *must consider* possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference" (emphasis added); *see also Sidney Z.M. v. Kijakazi*, No. 20 C 6617, 2023 WL 1100438, at *3 (N.D. Ill. Jan. 30, 2023) (holding that "*ALJ's minimum duty* to consider possible explanations for noncompliance issues – before drawing a negative credibility inference – is heightened with claimants that have significant mental impairments") (emphasis added). Second, and in any event, the evidence discussed by the ALJ himself–plaintiff's suicide attempt while off her medications, her refusal to participate in therapy because it made her cry and feel worse, and her refusal to enter inpatient therapy shortly after she began cutting herself and despite making a plan to do so–squarely presented the question whether plaintiff's mental illness impeded her ability to comply with treatment recommendations. Plaintiff's argument on this point is anything but speculative, and the ALJ's failure to address this issue means that his subjective symptom determination is patently erroneous. On remand, the ALJ must consider whether and to what extent plaintiff's mental illness impedes or prevents her from complying with recommended treatments.

10

## Conclusion

For these reasons, plaintiff's request to reverse the SSA's decision and remand this case to the agency [17] is granted, and the Acting Commissioner's motion for summary judgment [22] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: December 26, 2023**